IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RIVER CITY STEEL & RECYCLING, INC.,  §<br>§<br>    Plaintiff,  §<br>§<br>v.  §<br>§<br>ALLISON ROYCE & ASSOCIATES,  §<br>INC.,  §<br>    Defendant. | CIVIL ACTION NO.  5:20-CV-12 |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff River City Steel & Recycling, Inc. files this Original Complaint against Defendant Allison Royce & Associates, Inc., and in support, respectfully shows:

### I.   INTRODUCTION

1. River City Steel has had the same telephone number for over twenty-nine years. Many of its clients do business with River City Steel solely by telephone. River City Steel's telephone number is therefore akin to a valuable asset. If River City Steel were forced to change its long-standing telephone number, it would incur a detrimental loss of business and goodwill among its customers.

2. River City Steel's current telephone service provider—Allison Royce—is threatening such harm. After River City Steel suffered a devastating ransomware attack that stemmed from an IP address identified as belonging to a server hosted by Allison Royce,[1] River City Steel decided it was time to part ways with Allison Royce and engage a different service provider. But Allison Royce—in flagrant violation of federal law—has effectively prevented

---

[1] Full details regarding the origin of the ransomware attack were not available because Allison Royce refused to cooperate with River City Steel's investigation of the attack.

River City Steel from engaging a new service provider by refusing to transfer, or "port," River City Steel's telephone number to the new service provider, stating it will port the number only when River City Steel pays certain sums it allegedly owes Allison Royce—an attempted ransom that is prohibited by law.

3. River City Steel has made numerous attempts to resolve the issue with Allison Royce without resorting to litigation *for over seven months*, which is nothing less than outrageous given Allison Royce's obligation under federal law to comply with River City Steel's port request within *one business day*, *regardless* of any other dispute that might exist between the parties.

4. Having exhausted all other options, River City Steel brings this suit under the Communications Act to request that the Court order Allison Royce to stop holding River City Steel's telephone number hostage and port the telephone number to River City Steel's new service provider.

## II. PARTIES

5. Plaintiff River City Steel & Recycling, Inc. is a Texas Corporation with its principal place of business in San Antonio, Texas.

6. Defendant Allison Royce & Associates, Inc. is a Texas Corporation with its principal place of business in San Antonio, Texas, and may be served with process via its registered agent, Jeffery Tuttle, at 70 NE Loop 410, Suite 760, San Antonio, Texas 78216, or wherever he may be found.

## III. JURISDICTION & VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this suit arises under 47 U.S.C. § 401(b). Specifically, 47 U.S.C. § 401(b) provides that where a person fails or neglects to obey an order of the Federal Communications Commission, an injured party

"may apply to the appropriate district court of the United States for the enforcement of such order." 47 U.S.C. § 401(b).  Allison Royce has failed or neglected to obey an order of the FCC requiring that it port River City Steel's telephone number within twenty-four hours after River City Steel's request.

8. This Court has general personal jurisdiction over Defendant because Defendant is incorporated under the laws of the state of Texas, and Defendant's principal place of business is in Texas.  Additionally, the Court has specific personal jurisdiction over Defendant because it purposefully availed itself of the privileges and benefits of the laws of Texas by conducting business in Texas, and specifically conducting business with River City Steel in Bexar County.

9. Venue is proper in this district because Defendant resides in this district.  28 U.S.C. § 1391(b)(1).  Venue is also proper in this district because a substantial part of the events or omissions giving rise to the claim occurred within this district.  28 U.S.C. § 1391(b)(2).

### III.   FACTUAL BACKGROUND

#### A.   River City Steel Engages Allison Royce

10. River City Steel is an established provider of both steel materials and scrap metal recycling services, servicing San Antonio and the greater South Texas region.  Established in 1982, River City Steel, a respectable family-owned business, has for over thirty-seven years provided South Texans with quality scrap metal recycling services and steel materials.

11. Allison Royce is a San Antonio-based company providing telecommunications and IT support services in South Texas.

12. In or around September of 2015, River City Steel engaged Allison Royce to provide telecommunications services.  Specifically, on or about September 16, 2015, River City Steel signed a proposal agreeing to purchase certain equipment and telecommunications services from

3

Allison Royce, including telephone, internet, and cloud storage service, a true and correct copy of which is attached hereto as **Exhibit A** (the "**Proposal**").

13. In connection with the Proposal, River City Steel executed a Letter of Authorization, instructing and authorizing its then-current service provider to transfer, or "port," River City Steel's telephone number to Allison Royce. A true and correct copy of the Letter of Authorization is attached hereto as **Exhibit B**.

14. River City Steel has maintained the same telephone number for over twenty-nine years. Many of its clients conduct business with River City Steel solely by telephone. Moreover, many of River City Steel's customers are farmers, small businesses, and sole proprietors—many of whom do not have computers or do not know how to use computers, but are long-time customers or clients of River City Steel and have River City Steel's telephone number saved, or on speed-dial, or written down. If River City Steel were to ever change its telephone number or if River City Steel's telephone number were to be out of service, those customers would likely take their business to one of River City Steel's competitors instead of River City Steel. Accordingly, maintaining the same telephone number is vital to River City Steel's goodwill among its customers and continued success as a business.

**B.  Allison Royce Refuses to Port Plaintiff's Phone Number**

15. On or around April 29, 2019, River City Steel was subject to a ransomware attack that affected River City Steel's workstation and servers. River City Steel's cybersecurity counsel, Lewis Brisbois Bisgaard & Smith LLP hired a digital forensics firm, Envista Forensics, to investigate the attack's origin. Envista determined that the ransomware attack originated from an IP address identified as belonging to a server hosted by Allison Royce. Lewis Brisbois made

numerous attempts to communicate with Allison Royce in connection with its investigation of the attack, but Allison Royce refused to cooperate in the investigation.[2]

16. In the aftermath of the ransomware attack, on May 7, 2019, River City Steel informed Allison Royce that it wished to switch to a different service provider and amicably end its relationship with Allison Royce, which would involve Allison Royce porting River City Steel's telephone number to the new service provider. When Allison Royce failed to respond, River City Steel sent a follow-up e-mail on May 10, 2019. On May 13, 2019, River City Steel's Executive Human Resources Consultant, Lina Triesch, called Jeffery Tuttle, Allison Royce's President, regarding River City Steel's request to switch to a new service provider, but Tuttle was dismissive and refused to engage in dialogue regarding River City Steel's request.

17. River City Steel also sent e-mails to Allison Royce on May 17, 2019 and May 23, 2019 in an attempt to confer regarding River City Steel's decision to switch to a different service provider, but Allison Royce continued to ignore River City Steel's attempts at engaging in dialogue.

18. In or around June 2019, River City Steel decided to engage Resonant Technology Partners for information technology services, and Charter Communications, Inc. d/b/a Spectrum for VoIP telephone service. Since 2015, River City Steel had used Allison Royce both for information technology services and for VoIP telephone service.

19. On July 23, 2019, River City Steel sent an e-mail to Jeffery Tuttle requesting that Allison Royce cooperate with its request to port River City Steel's telephone number to its new service provider, and explaining that Allison Royce is required by federal law to comply with port requests. On July 24, 2019, River City Steel sent an e-mail to Allison Royce's service portal,

---

[2] Because Allison Royce refused to cooperate in the investigation, Envista was unable to make conclusive determinations regarding the source of the ransomware attack.

requesting that Allison Royce port out its telephone number. On July 25, 2019, River City Steel instructed Allison Royce that Spectrum would be contacting Allison Royce to coordinate the porting of River City Steel's telephone number and requested that Allison Royce cooperate with Spectrum. On August 5, 2019, Resonant Technology Partners, on behalf of River City Steel, e-mailed multiple personnel at Allison Royce, requesting that Allison Royce cooperate with River City Steel's port request. On August 6, 2019, River City Steel's counsel sent an e-mail to Allison Royce, requesting that Allison Royce fully cooperate with River City Steel's port request, and informing Allison Royce of its obligation to comply with port requests under federal law.

20. Allison Royce refused to comply with all of River City Steel's requests.

21. When River City Steel's efforts to work directly with Allison Royce failed, it contacted the FCC Consumer Help Center on August 14, 2019 regarding Allison Royce's refusal to port River City Steel's telephone number. The FCC Consumer Help Center informed River City Steel via e-mail that it made repeated attempts to contact Allison Royce to facilitate a discussion between Allison Royce and River City Steel in an effort to resolve the dispute, but that those attempts were unsuccessful.

22. On August 30, 2019, the FCC Consumer Help Center informed River City Steel that River City Steel could file a complaint in federal district court under the Communications Act, and directed River City Steel to the FCC regulation that governs service providers' obligation to comply with a customer's request to port the customer's telephone number. A true and correct copy of the August 30, 2019 e-mail from the FCC Consumer Help Center to River City Steel is attached hereto as **Exhibit C**.

23. On September 18, 2019, counsel for River City Steel sent a demand letter to Allison Royce, informing Allison Royce that its refusal to port River City Steel's telephone number

constituted a violation of FCC regulations. A true and correct copy of the September 18, 2019 demand letter is attached hereto as **Exhibit D**. On October 17, 2019, Allison Royce responded to the demand letter, stating that it had received River City Steel's demand letter, but that it would not comply with River City Steel's request to transfer the port until River City Steel paid certain amounts allegedly owed to Allison Royce. In an ominous fashion, Allison Royce threatened that until River City Steel paid the amount demanded, Allision Royce is "unable to prevent disruptions in service." A true and correct copy of the October 17, 2019 letter sent by Allison Royce is attached hereto as **Exhibit E**.

24. In a further attempt at resolving the porting issue without resort to litigation, in October of 2019, the undersigned counsel contacted two law firms that had previously represented Allison Royce in separate, unrelated lawsuits filed in state court in Bexar County.[3] However, those attorneys informed the undersigned counsel that they no longer represented Allison Royce.

25. Allison Royce has refused to port River City Steel's telephone number despite multiple and repeated requests from River City Steel and their lawyers, beginning over seven months ago.

26. River City Steel has been injured by Allison Royce's refusal to port its telephone number. Allison Royce's refusal prevents River City Steel from switching to the telephone service

---

[3] In fact, Allison Royce is no stranger to litigation—it has been involved in multiple lawsuits in state court in Bexar County alone. In 2003, Allison Royce was sued for defaulting under a finance agreement in *Textron Financial Corporation v. Allison Royce & Associates, Inc.*, Cause No. 288624 in County Court at Law No. 7, Bexar County, Texas. In 2014, in *Allison Royce & Associates, Inc. v. Guido Brothers Construction Company*, Cause No. 2015CV01120 in County Court at Law No. 5, Bexar County, Texas, Allison Royce was sued for allegedly changing the terms of its service agreements without informing the customer, failing to properly install protective software on the customer's computers, causing disruptions of the customer's business on multiple occasions due to its failure to maintain the customer's servers, charging for services that were not performed, and shutting down the customer's e-mail service without notice. In 2015, in *Allison Royce & Associates, Inc. v. Favelle Favco Cranes USA, Inc.*, Cause No. 2015CV02374, in County Court at Law No. 10, Bexar County, Texas, Allison Royce was sued for allegedly allowing internet and e-mail connectivity problems to occur, sometimes for as long as a week, while refusing to accept responsibility for the connectivity problems, forcing the customer to switch to a different service provider.

provider of its choice and experiencing peace of mind that its server and workstations are no longer exposed to Allison Royce's servers, from which River City Steel experienced a ransomware attack that caused significant disruptions to its business. Allison Royce has also threatened injury to River City Steel by essentially holding its telephone number hostage while demanding payment of sums allegedly owed, and stating that until such payment is made, Allison Royce is "unable to prevent disruptions in [River City Steel's] service."

27. Moreover, Allison Royce's refusal to port River City Steel's telephone number threatens River City Steel with irreparable injury. If River City Steel is forced to adopt a new telephone number in order switch to the service provider of its choice, River City Steel could lose countless customers who do business with River City Steel primarily via telephone.

28. River City Steel has maintained the same telephone number for over twenty-nine years and has used its telephone number in marketing materials throughout this time, including employee business cards the company's website. A sudden change in its telephone number, the primary means by which many customers contact River City Steel, would likely cause immeasurable business loss as customers, inconvenienced by their inability to contact River City Steel, would likely then seek to do business with one of River City Steel's competitors.

29. In light of Allison Royce's persistent refusal to comply with River City Steel's request to port its telephone number, River City Steel now brings this action to request that the Court enter an injunction ordering Allison Royce to comply with its obligations under the Communications Act and FCC regulations and port River City Steel's telephone number.

## IV. CLAIM FOR INJUNCTIVE RELIEF UNDER 47 U.S.C. § 401(B)

30. Plaintiff incorporates herein by reference paragraphs 1 through 29 above.

31. Section 251(b)(2) of the Communications Act requires local exchange carriers ("LECs") to "provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." 47 U.S.C. § 251(b)(2). The Communications Act defines number portability as "the ability of users of telecommunications services to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another." 47 U.S.C. § 153(37).

32. On July 2, 2009, the FCC published an order in the Federal Register (the "**2009 FCC Order**") requiring telephone service providers subject to the FCC's local number portability rules "to complete simple wireline-to-wireline and simple intermodal port requests within one business day." *See* Local Number Portability Porting Interval and Validation Requirements; Telephone Number Portability, 74 Fed. Reg. 31630, 2009 WL 1883658 (F.R.) (July 2, 2009). A true and correct copy of the 2009 FCC Order is attached hereto as **Exhibit F**.

33. The FCC in the 2009 FCC Order declared that it is "critical that customers be able to port their telephone numbers in an efficient manner" so as to give customers "flexibility in the quality, price, and variety of telecommunications services." *Id.* The FCC further noted that "[d]elays in porting cost consumers time and money and limit consumer choice and competition because when consumers get frustrated with slow porting, they often abandon efforts to switch providers." *Id.*

34. On June 22, 2010, the FCC published an order in the Federal Register (the "**2010 FCC Order**") expanding on and amending the regulations set forth in the 2009 Order. *See* Local Number Portability Porting Interval and Validation Requirements; Telephone Number Portability, 75 Fed. Reg. 35305, 2010 WL 2481139 (F.R.) (June 22, 2010). Specifically, the 2010 FCC Order

clarifies that all telecommunications providers bound by the FCC's rules, including small providers, must comply with the one-business day porting requirement by February 2, 2011. *Id.* The 2010 FCC Order further provided that the one-business day porting requirement applied not only to wireline-to-wireline ports, but also wireless-to-wireline ports, wireline-to-wireless ports, and ports involving interconnected VoIP service. *Id.* at 35315. A true and correct copy of the 2010 FCC Order is attached hereto as **Exhibit G**.

35. The regulations set forth in the 2009 FCC Order and 2010 FCC Order (together, the "**FCC Orders**") are found primarily in 47 C.F.R. § 52.35.[4]

36. The Communication Act provides that a party injured by another's failure to obey an order issued by the FCC "may apply to the appropriate district court of the United States for the enforcement of such order." 47 U.S.C. § 401(b) ("**Section 401(b)**").

37. Section 401(b) further provides, "If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same." 47 U.S.C. § 401(b).

38. The 2009 FCC Order and the 2010 FCC Order each constitutes an "order" under Section 401(b).

39. Allison Royce is bound by the provisions of the FCC Orders because it is a "local exchange carrier" as defined by FCC regulations. Specifically, Allision Royce is a company

---

[4] The FCC Orders also enacted or amended federal regulations found in 47 CFR § 52.21, 47 CFR § 52.26, and 47 CFR § 52.36.

"engaged in the provision of telephone exchange service or exchange access." 47 C.F.R. § 52.21(i).

40. The FCC Orders were regularly made and duly served by way of publication in the Federal Register. Moreover, River City Steel's demand letters to Allison Royce clearly informed Allison Royce of its obligation under the FCC Orders to comply with River City Steel's request to port its telephone number.

41. Allison Royce has failed to obey the FCC Orders by refusing to comply with River City Steel's requests that Allison Royce port River City Steel's telephone number. River City Steel has requested to transfer its VoIP phone service with Allison Royce to VoIP phone service with Spectrum. Accordingly, the port request made by River City Steel calls for a port involving interconnected VoIP service.

42. River City Steel's port request is a simple port request because it calls for the porting of an account with a single telephone number, does not include complex switch translations, and does not involve unbundled network elements. *See In Re Tel. No. Portability*, CC Docket No. 95-116, Memorandum Opinion and Order and Further Notice of Proposed Rulemaking, 18 F.C.C. Rcd. 23697, 23715, para. 45 n. 112, 2003 WL 22658207 (F.C.C. 2003).

43. River City Steel is a proper party to seek enforcement of the FCC Orders because it has been injured by Allison Royce's failure to comply with the same, and furthermore faces irreparable injury should Allison Royce's flagrant disregard of its obligations under federal law be allowed to continue.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, and that upon hearing and trial, Plaintiff recover Judgment from Defendant as follows:

a. A Preliminary Injunction commanding Allison Royce to take all commercially reasonable steps to "prevent disruption" to services it provides to River City Steel;

b. A Preliminary Injunction and Permanent Injunction commanding Allison Royce to port River City Steel's telephone number to Spectrum, or Plaintiff's other designated provider, in accordance with Plaintiff's previous request;

c. All costs of court; and

d. Any and all further relief, both in law and in equity, to which Plaintiff may be deemed justly entitled.

Date: January 7, 2020.

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By: */s/ Caroline Newman Small*
Caroline Newman Small
**Attorney-in-Charge for Plaintiff**
State Bar No. 24056037
E-mail: *csmall@dslawpc.com*
Landon Hankins
State Bar No. 24100924
E-mail: *lhankins@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Telephone: (210) 853-5882
Facsimile: (210) 200-8395